Jimmy NEUSCHAFER,
Petitioner–Appellant,

v.

Harol WHITLEY; Attorney General for
the State of Nevada,
Respondents–Appellees.

No. 88–1688.

United States Court of Appeals,
Ninth Circuit.

Argued Feb. 29, 1988.

Submitted May 6, 1988.

Decided Nov. 3, 1988.

Mary E. Boetsch, Mooney & Boetsch, Ltd., Reno, Nev., for petitioner-appellant.

Brian McKay, Attorney General and David Sarnowski, Deputy Atty. Gen., Carson City, Nev., for respondents-appellees.

Before CHAMBERS, ALARCON and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Jimmy Neuschafer appeals from the dismissal of his petition for writ of habeas corpus on abuse of the writ grounds. We reverse and remand.

## I.

Jimmy Neuschafer was sentenced to death on April 12, 1983 for killing fellow inmate Johnnie Johnson. He appealed his conviction to the Nevada Supreme Court which affirmed it on August 27, 1985. *Neuschafer v. State*, 101 Nev. 331, 705 P.2d 609 (1985). On October 7, 1985 the state trial court held a hearing during which Neuschafer's counsel was relieved. No new counsel was appointed and the court set an execution date of November 5, 1985.

On October 22, 1985, with some assistance from the state public defender's office, Neuschafer filed a pro se state habeas petition, requested a stay of execution, and requested counsel. Neuschafer's state petition raised two issues: (1) Neuschafer's fifth and sixth amendment rights were violated because a confession was obtained after he requested counsel, and (2) there might be other grounds that would come to light once a lawyer was appointed.

On October 24, 1985 the state trial court held a hearing on this petition at which Neuschafer was present. The court denied relief and dismissed the petition without prejudice because it was conclusory and because the first ground had been decided by the Nevada Supreme Court on direct appeal. The court cautioned Neuschafer that if he filed another petition he should raise *all* issues that challenged the validity of his sentence and conviction in that single petition; otherwise he would not be able to assert them in a subsequent habeas petition. *See* Nev.Rev.Stat. § 177.380 (1987).

At a hearing in the state trial court on October 30, 1985 a state public defender was appointed to represent Neuschafer at his request. Counsel asked for a 120 day stay of execution in order to obtain the record, review it thoroughly, and determine what issues could be raised in a habeas petition. One issue that counsel believed existed was an ineffective assistance of counsel claim. At this hearing counsel acknowledged, in Neuschafer's presence, that the state trial court previously had informed Neuschafer "that each and every possible allegation and error must be raised in this petition or it is forever barred in the State court. And, of course, that would mean to be forever barred in going anywhere, because the Federal Court is going to look whether or not Mr. Neuschafer exhausted his State remedies." The state trial court denied the stay of execution.

A state public defender appealed from both the denial of the stay and the denial without prejudice of Neuschafer's pro se state habeas petition. At oral argument before the Nevada Supreme Court, counsel argued the ineffective assistance of counsel claim without having amended Neuschafer's petition to raise the claim. On November 1, 1985 the supreme court denied the stay and dismissed the appeal without prejudice to Neuschafer filing an amended state habeas petition, as permitted by the state trial court's order.

Neuschafer did not return to the state trial court. Instead, on that same day and with some help from the federal public defender's office, Neuschafer filed a pro se federal habeas petition, moved for appointment of counsel, and requested a stay of execution. This petition raised only one ground: it challenged the admissibility of a confession Neuschafer made after he requested counsel.

The district court appointed a federal public defender to represent Neuschafer and held a hearing on November 4, 1985 to consider the application for a stay. Neuschafer was not present. At the hearing counsel expressed his belief that there were additional issues that might be raised in state court that had not been raised in the federal petition: "There are dozens of issues that could be raised pending a more complete review of the record by an attorney at law." Counsel specifically mentioned the availability of an ineffective assistance of counsel claim and that that claim had not been exhausted.

■ Counsel also suggested to the district court the possibility of holding the federal petition in abeyance, granting a stay of execution, and allowing a state public defender to develop in state court any additional unexhausted claims that the federal public defender found after review-

ing the record.[1] In this way, counsel thought he could avoid what he perceived as the problem of getting a stay from the state courts if Neuschafer returned there.

The district court was reluctant to issue a stay on the ground that a review of the record *might* disclose unexhausted issues. However, because Neuschafer's petition raised a facially valid constitutional claim, the district court granted a stay to deal with that issue. This allowed counsel to review the record for both exhausted and unexhausted claims without the threat of Neuschafer's imminent execution.

The district court also gave Neuschafer twenty-one days, until November 25, 1985, to file a supplemental federal petition to raise whatever other grounds for relief counsel could discern. The court cautioned counsel to raise all possible issues in the supplemental petition because Neuschafer might be precluded from raising them in a later federal petition.[2] Furthermore, the court indicated that if a review of the record indicated that there were unexhausted issues, the court would determine *at that point* whether it could issue a stay while Neuschafer proceeded in state court.

On November 25, 1985 Neuschafer filed his supplemental federal petition which raised three grounds for relief, all of which had been presented to the Nevada Supreme Court on direct appeal: (1) his confession was obtained after he requested counsel, (2) insufficient evidence was presented to support the death sentence, and (3) the death sentence was a disproportionate penalty. The petition did not raise any of the unexhausted claims that counsel was sure existed on November 4, including the ineffective assistance of counsel claim. Notably, Neuschafer did not request that the district court issue a stay and hold the federal petition in abeyance so he could return to state court to exhaust state reme-

---

1. When a petitioner has not exhausted his state remedies before filing a federal habeas petition, a district court may hold the federal petition in abeyance, issue a stay of execution, and allow the petitioner an opportunity to exhaust his state remedies. *E.g., Blair v. California,* 340 F.2d 741, 745 (9th Cir.1965); *Duffy v. Wells,* 201 F.2d 503, 504 (9th Cir.1953); *Tinder v. Paula,*

725 F.2d 801, 805 (1st Cir.1984); *Collins v. Lockhart,* 707 F.2d 341, 342, 344 (8th Cir.1983); *Modesto v. Nelson,* 296 F.Supp. 1375, 1376 (N.D.Cal. 1969).

2. The court's written order of November 4, 1985 echoed a similar warning.

dies. The district court denied the federal petition on March 1, 1986. *Neuschafer v. Whitley,* 630 F.Supp. 897 (D.Nev.1986).

Neuschafer appealed to this court and we remanded for an evidentiary hearing on the issue of his confession and whether he waived his right to counsel. *Neuschafer v. McKay,* 807 F.2d 839 (9th Cir.1987). The district court held a hearing and made findings. *Neuschafer v. Whitley,* 656 F.Supp. 891 (D.Nev.1987). We then rejected Neuschafer's constitutional arguments and affirmed the denial of the petition by the district court. *Neuschafer v. Whitley,* 816 F.2d 1390 (9th Cir.1987). We also granted a stay of execution pending the filing of a petition for grant of certiorari by the Supreme Court. However, after a conscientious review of the record, the federal public defender moved to withdraw the stay because he thought a petition would not be granted and could be viewed as a dilatory tactic.

Neuschafer then returned to the state trial court. On July 21, 1987 all attorneys who had represented Neuschafer were notified of a hearing to be held on August 4, 1987 regarding the issuance of a warrant of execution. At that August 4 hearing Neuschafer asked the state trial court to release all his previous counsel from further responsibility because "they have done enough for me, your Honor. They were my trial lawyers and they can't help me no further." After canvassing counsel and Neuschafer, the court released all prior counsel including the state public defender's office. Neuschafer's execution date was set for August 20, 1987.

On August 5, 1987, the day after he requested to have counsel relieved, Neuschafer filed a second pro se state habeas petition that raised a number of new grounds. He also requested that an attorney be appointed to represent him in the habeas proceedings. The state public defender was again appointed. On August 10 counsel requested a stay of execution because counsel was not familiar with the record and needed time to prepare a supplemental state petition after reviewing the record.

On August 17, 1987 the state trial court held a hearing. At Neuschafer's request the court removed the state public defender's office as counsel because of conflicts of interest. The court also dismissed Neuschafer's habeas petition without prejudice because it was conclusory. The court offered to appoint independent counsel, without any connection to the state public defender's office, to assist Neuschafer with his appeal to the Nevada Supreme Court. Neuschafer replied, "I appreciate that, but it's not necessary."

On August 18, 1987, although expressly relieved from the case because of conflicts of interest, a state public defender filed a notice of appeal to the Nevada Supreme Court which included an affidavit stating the state public defender's belief that Neuschafer was not competent to discharge counsel, to waive appointment of other counsel, or to waive his appeal. The Nevada Supreme Court considered the appeal because of the gravity of the sentence, but dismissed it on August 19, 1987.

After vacillating on whether to request relief from federal court, Neuschafer filed a second federal habeas petition late in the evening on August 19, 1987, only a few hours before his 2:00 a.m. execution time. The district court granted a stay of execution. This second federal petition raised seven grounds for relief: (1) ineffective assistance of counsel, (2) failure to disqualify the trial judge, (3) failure to object to jury instructions, (4) failure to request change of venue, (5) failure to dismiss a juror, (6) failure to present mitigating circumstances at the penalty phase, and (7) inability to call witnesses on his own behalf.

On November 20, 1987 the district court held an evidentiary hearing to determine whether Neuschafer had abused the writ by bringing the claims in his second federal petition. The State called Neuschafer to the stand to explain why he did not raise these claims in his first federal petition. Neuschafer's attorney objected to him testifying on fifth amendment grounds. The court determined that the fifth amendment did not apply and ordered Neuschafer to

answer the questions asked him. Nevertheless, Neuschafer refused to answer questions about his knowledge of unexhausted claims when he filed his first federal petition. The district court dismissed this second petition on December 8, 1987 on the grounds that Neuschafer had abused the writ of habeas corpus. *Neuschafer v. Whitley,* 674 F.Supp. 1418 (D.Nev.1987). The court denied a motion for reconsideration on January 12, 1988. Neuschafer appeals from the dismissal of this second federal habeas petition.

## II.

■ We review for an abuse of discretion a district court's decision to deny consideration on the merits of a petition for habeas corpus because the petition is abusive or successive.[3] *Sanders v. United States,* 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963); *see Arellanes v. United States,* 408 F.2d 1392, 1392 (9th Cir.1969) (district court did not abuse its discretion in not considering successive petition on grounds that ends of justice would not be served by redetermination of the merits); *Curry v. Wilson,* 405 F.2d 110, 111 (9th Cir.1969). A court abuses its discretion when it bases its decision on an erroneous legal conclusion or on a clearly erroneous finding of fact. *Andrew v. Bowen,* 837 F.2d 875, 877 (9th Cir.1988).

Title 28 U.S.C. § 2244(b) and Rule 9 of the Rules Governing Section 2254 Cases, 28 U.S.C. foll. § 2254, codify the abuse of the writ doctrine. *Richmond v. Ricketts,* 774 F.2d 957, 959 (9th Cir.1985). We look to the Supreme Court decision in *Sanders* to determine what circumstances constitute an abuse of the writ. *See Richmond,* 774 F.2d at 961; *Johnson v. Lumpkin,* 769 F.2d 630, 636 & n. 18 (9th Cir.1985).

■ A federal court need not consider habeas claims previously unlitigated in federal court if it determines that the petitioner (1) made a conscious decision deliberately to withhold them from a prior petition, (2) is pursuing needless piecemeal litigation, or (3) has raised the claims only to vex, harass, or delay. *See Sanders v. United States,* 373 U.S. 1, 18–19, 83 S.Ct. 1068, 1078–79, 10 L.Ed.2d 148 (1963); *Richmond v. Ricketts,* 774 F.2d 957, 961 (9th Cir.1985).

The district court determined that Neuschafer made a conscious decision deliberately to withhold unexhausted issues from his first federal habeas petition; therefore, the court decided not to hear Neuschafer's second federal habeas petition in which he raised those issues. The court noted that the evidence presented[4] tended to show that Neuschafer chose deliberately to withhold claims from his first federal habeas petition because he had not yet exhausted them in state court. Neuschafer feared those claims would have been barred and his federal petition would have been dismissed for failure to exhaust state remedies.[5] 674 F.Supp. at 1422–25. Nevertheless, the court ruled that "the fact that these claims were unexhausted when the first writ was filed does not constitute an excuse for abuse as a matter of law." *Id.*

---

3. Although courts often use the terms "abusive" and "successive" interchangeably, there is an important difference between abusive and successive petitions. An abusive petition raises grounds that were available but not raised in an earlier petition. A successive petition raises grounds identical to those raised in a prior petition. *See Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986). Moreover, there are different standards that determine when a court may dismiss a petition as abusive and when it may dismiss one as successive. *See Sanders,* 373 U.S. at 15–19, 83 S.Ct. at 1077–79.

4. Neuschafer presented no documentary evidence and called no witnesses at the evidentiary hearing on November 20, 1987. Instead, he relied on "the evidence and testimony presented in the voluminous records of [his] first habeas corpus petition." 674 F.Supp. at 1421.

When called to the stand to explain his state of mind when he filed his first federal habeas petition, Neuschafer's counsel objected on the basis of the fifth amendment. The court ruled that the fifth amendment did not apply and ordered Neuschafer to respond to the State's questions. Neuschafer refused to answer any questions.

5. Although he initially suggested this option to the district court, Neuschafer never asked the court to issue a stay, hold the federal petition in abeyance, and allow him to return to state court to exhaust his state remedies.

at 1425. *Accord Rudolph v. Blackburn,* 750 F.2d 302, 305 (5th Cir.1984); *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983) (en banc).

In *Tannehill v. Fitzharris,* 451 F.2d 1322 (9th Cir.1971), we specifically addressed this issue of whether withholding claims from an initial federal habeas petition because state remedies had not been exhausted could constitute a ground for finding a deliberate abuse of the writ when a second petition was brought that raised those claims once they had been exhausted. In *Tannehill,* a petitioner brought a second federal habeas petition alleging sixteen grounds for relief. One ground was the subject of a previous petition and fifteen were new. The district court denied the petition because one claim had previously been adjudicated and the other fifteen were an abuse of the writ.

We reversed on both grounds. We held that a petitioner does not " 'deliberately' abuse the writ" within the meaning of *Sanders* if (1) he left claims out of a previous federal petition because he believed in good faith that his claims would be barred until he had exhausted state remedies, and (2) he brings these claims in a later federal habeas petition after exhausting state remedies. *Id.* at 1323.

*Tannehill* thus changed the meaning of "deliberate" from a fact-specific definition to a legal one. By prohibiting a factual determination of a "deliberate abuse of the writ" when a petitioner proffers the excuse of "unexhaustion" for deliberately withholding claims from a prior federal petition, *Tannehill* allows individuals such as Neuschafer to engage in piecemeal litigation and to delay the imposition of their death sentences.

*Tannehill* allows petitioners to exhaust their state remedies one by one and to bring a new federal habeas petition each time they exhaust a state claim. The decision does nothing to encourage a petitioner to make only one trip through each court system. *Cf.* Nev.Rev.Stat. § 177.380 (1987). Part of the reason the Ninth Circuit adopted a total exhaustion rule was to avoid fragmented appeals in habeas cases. *See Gonzales v. Stone,* 546 F.2d 807, 809–10 (9th Cir.1976). Fragmented appeals cannot be avoided unless petitioners who leave behind unexhausted claims for future federal petitions run the risk of forfeiting those claims.

In *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court held that federal habeas petitions that contain both exhausted and unexhausted claims, "mixed" petitions, must be dismissed. *Id.* at 522, 102 S.Ct. at 1205. A petitioner who files a mixed petition may (1) amend the petition and proceed with only the exhausted claims, setting aside the unexhausted, or (2) have the petition dismissed without prejudice and return to state court to exhaust the unexhausted claims, and then return to federal court with all the claims for relief.

Justice O'Connor authored a plurality opinion in *Rose,* joined by Chief Justice Burger and Justices Powell and Rehnquist. Justice O'Connor wrote that a petitioner who proceeds in federal court only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions that raise those issues because those petitions could be considered an abuse of the writ under *Sanders.* In such a case, Justice O'Connor opined that the petitioner would have made a conscious decision deliberately to withhold those claims from the initial federal petition.[6] *Id.* at 520–21, 102 S.Ct. at 1204–05 (Section "C"). Justice O'Connor did not state that subsequent petitions must be dismissed; rather, in light of *Sanders* and Rule 9(b) a court would have discretion to dismiss them for abuse of the writ.

---

**6.** The Court split 4–4–1 on this issue.

In his partial concurrence and partial dissent, Justice Brennan argued that a petitioner who is not permitted to proceed with his unexhausted claims by the total exhaustion rule of *Rose* has not made a "deliberate" decision not to proceed with those claims. *See* 455 U.S. at 536–37, 102 S.Ct. at 1212–13 (Brennan, J., concurring in part and dissenting in part). This reasoning is similar to this court's conclusion in *Tannehill.*

In this case, the district court noted that there was evidence [7] that Neuschafer withheld from his first federal petition the claims in his second federal petition because he had not yet exhausted his state remedies and feared those claims would be barred by the total exhaustion rule of *Rose v. Lundy.* 674 F.Supp. at 1425.[8] The district court found the *Rose* plurality opinion persuasive and held that "the fact that these claims were unexhausted when the first writ was filed does not constitute an excuse for abuse purposes as a matter of law. Neuschafer has failed to demonstrate that his withholding of these claims was anything but deliberate, and his petition is therefore abusive." *Id.*

 The district court apparently was unaware of *Tannehill,* and neither party

has brought this case to our attention. Instead, the district court concluded, and the State of Nevada has argued on appeal, that the plurality opinion of Justice O'Connor is the better approach. Although our research reveals that all other circuits that have considered the issue have adopted the plurality opinion's approach,[9] we are not free to ignore *Tannehill* which is binding precedent.[10] We therefore hold, as a matter of law, that Neuschafer's claim that he did not bring the claims in his first federal petition because they were unexhausted and barred by *Rose* precludes a finding that he *deliberately* withheld those claims from his first federal petition and thereby abused the writ when he brought them in a second federal petition.[11] *Tannehill,* 451 F.2d at 1324.

---

7. *See supra* note 4.

8. As we noted before, Neuschafer failed to ask the district court to issue a stay, hold the federal petition in abeyance, and allow him to return to state court to exhaust his state remedies.

9. The Fifth, Eighth, Tenth, and Eleventh Circuits all have adopted Justice O'Connor's approach. *See Rudolph v. Blackburn,* 750 F.2d 302, 305 (5th Cir.1984); *Jones v. Estelle,* 722 F.2d 159 (5th Cir.1983) (en banc); *Jeffers v. Sargent,* 842 F.2d 1008, 1009 n. 2 (8th Cir.1988), *Dukes v. Lockhart,* 769 F.2d 504, 506 (8th Cir. 1985); *Purnell v. Missouri Department of Corrections,* 753 F.2d 703, 710 (8th Cir.1985); *Jones v. Hess,* 681 F.2d 688, 695 (10th Cir.1982); *Smith v. Atkins,* 678 F.2d 883, 884 (10th Cir.1982); *McCorquodale v. Kemp,* 832 F.2d 543, 545–46 (11th Cir.1987); *Arango v. Wainwright,* 716 F.2d 1353, 1355 (11th Cir.1983). *Cf. Robinson v. Fairman,* 704 F.2d 368, 370 n. 5 (7th Cir.1983) (declining to address the question of what constitutes abuse of the writ); *Guthrie v. Warden,* 683 F.2d 820, 821 n. 1 (4th Cir.1982) (same).

The district courts, however, appear to be split on whether to adopt Justice O'Connor's approach. *See, e.g.,* cases collected in *Jones v. Estelle,* 722 F.2d 159, 169 n. 11 (5th Cir.1983) and in *Neuschafer v. Whitley,* 674 F.Supp. 1418, 1424 (D.Nev.1987).

10. Two Ninth Circuit cases have discussed in dicta the plurality opinion in *Rose v. Lundy.* In *Powell v. Spalding,* 679 F.2d 163 (9th Cir. 1982), we suggested that although the issue was not before us, if and when the petitioner filed a second petition he would not be barred by the abuse of the writ doctrine from raising previously unexhausted claims because of the unique circumstances of the case. *Id.* at 165 n. 2. In *Szeto v. Rushen,* 709 F.2d 1340 (9th Cir. 1983), we remanded a mixed petition instead of

allowing the petitioner to abandon an unexhausted issue on appeal because abandonment is a serious choice, and under *Rose* the petitioner may risk forfeiting later consideration of unexhausted claims in federal court. *Id.* at 1341.

11. Neuschafer also claimed that he was under "duress" when he filed his first federal petition on November 1, 1985: he could either file a petition with only unexhausted claims and get a stay of his November 5 execution from federal court, or he could return to state court to exhaust state remedies and run the risk of not getting a stay. Neuschafer claims that his situation was exceptional and that it should prevent a determination that he abused the writ when he omitted unexhausted claims from his first federal petition.

His argument fails to address the fact that the district court appointed counsel, granted a stay of execution, and allowed Neuschafer twenty-one days in which to file a supplemental petition raising *all* his claims for relief. Whatever urgency was present when Neuschafer filed his pro se petition on November 1 was not present in the time counsel had to file the supplemental petition.

Furthermore, after having twenty-one days to review the record, Neuschafer did not request that the district court hold the federal petition in abeyance and issue a stay to allow him to return to state court to exhaust state remedies.

Moreover, Neuschafer's claim that a stay from the federal court was more likely than one from the state courts is supported only by the fact that the district court granted a stay although the state courts had denied one. Neuschafer fails to point out that he presented the federal court with a facially valid claim on which to grant a stay. In contrast, Neuschafer presented

We are aware of the problems that this result may create.

Neuschafer's petition raises seven claims, each of which was presented to the Nevada Supreme Court. In dismissing Neuschafer's appeal, the Nevada Supreme Court rejected some of these claims on the merits as "belied by the record," and it rejected some as conclusory, unsupported by factual allegations, and without prejudice to renew them in a properly pleaded petition.[12] The district court will have to determine whether the supreme court's disposition of these claims amounts to an exhaustion of state remedies. If not, the district court may have before it a mixed petition.

Under *Rose v. Lundy*, Neuschafer then may be allowed to amend his petition to delete the unexhausted claims. After he pursues all his federal remedies on the exhausted claims, he may decide to return to state court to exhaust his still unexhausted claims. He may then be able to file a third federal habeas petition. This cycle may continue. Indeed, as each new execution date approaches, Neuschafer will have every incentive to think up new unexhausted claims in order to avoid the penalty which the jury imposed.

Although we recognize these potential problems, we are compelled by Ninth Circuit precedent to reverse the district court.

REVERSED AND REMANDED.

CHAMBERS, Circuit Judge, concurring:

Reluctantly, I concur.

When the case was here before, I dissented. *Neuschafer v. McKay*, 807 F.2d 839, 842 (9th Cir.1987). That decision has become the law of the case.

I am sure that the majority did not foresee that counsel for the State of Nevada would seek to invoke "Abuse of the Writ."

On remand, the district court should be certain that the prisoner has exhausted all of his points before the courts of Nevada and the Federal district court, except possibly the one that his present counsel has incompetently represented him which has not yet emerged. Surely he can't use that one more than four or five successive times.

In preparing for our first round, *Neuschafer*, 807 F.2d 839, I was worried that counsel seemingly did not bear down on the "buggery" that Neuschafer asserted was what provoked his deed. But that was before we found in the record his disgusting criminal record in the sex field when he was not in custody. When we found that, then I knew why his trial counsel chose to emphasize the weak *Miranda* point. The original trial record tells me that he was competently represented at his trial and that his trial counsel made a wise choice.

I repeat what Mr. Justice Douglas said in his dissent in *Chessman v. Teets*, 354 U.S. 156, 166–67, 77 S.Ct. 1127, 1132–33, 1 L.Ed. 2d 1253 (1957):

I agree that in a case like this it matters not whether the petitioner is guilty or innocent, whether his complaint is timely or tardy. We should respect a man's constitutional right whenever or however it is presented to us. My difficulty here is not with any principle the Court announces. My dissent is based on the conviction that, in substance, the requirements of due process have been fully satisfied, that to require more is to exalt a technicality.

ALARCON, Circuit Judge, concurring in the result:

I agree that we must reverse and remand this matter because the district court

---

the state courts only with unsupported, conclusory claims. The district court declined to grant a stay merely because a review of the record might reveal other claims, just as the state courts had.

12. The Nevada Supreme Court's November 19, 1987 order is ambiguous. The Nevada Attorney General's office requested that the court clarify whether the court dismissed Neuschafer's second state petition with prejudice, or whether it reviewed the merits of Neuschafer's claims. In a November 20 order the court declined to clarify its order because the court determined the order was sufficiently clear.

erred in ruling that Neuschafer abused the writ. I write separately to explain why I do not agree with the majority that our decision in *Tannehill v. Fitzharris*, 451 F.2d 1322 (9th Cir.1971) necessarily "allows petitioners to exhaust their state remedies one by one and to bring a new federal habeas petition each time they exhaust a state claim." Maj. op. *supra* at 1475. I also suggest a procedure which, if followed by district courts, is fully protective of the petitioner's rights, consistent with our decision in *Tannehill*, and responsive to my colleague's concern that the law of our circuit appears to allow petitioners to file a judicially uncontrollable succession of petitions.

The issue we must resolve in this matter is whether a petitioner abuses the writ of habeas corpus by filing a petition in federal court before exhausting all his federal constitutional claims in state court, in a case where:

> (1) petitioner has acted expeditiously in seeking postconviction relief from the state court;
>
> (2) the state's highest court has refused to stay the imposition of petitioner's death sentence and has refused to grant newly appointed counsel sufficient time to review the record to identify and exhaust all of petitioner's federal constitutional claims; and
>
> (3) petitioner is scheduled to be executed in four days.

This grave question arises from the following procedural history: Neuschafer's conviction and sentence were affirmed by the Nevada Supreme Court on August 27, 1985. The remittitur issued on September 17, 1985. On October 7, 1985, the state trial court fixed an execution date of November 5, 1985. With no counsel to assist him, Neuschafer immediately prepared a pro se petition for writ of habeas corpus. He filed the petition in the state trial court on October 22, 1985. His moving papers included a request for the appointment of counsel to assist him in seeking state postconviction relief. On October 24, 1985, the state trial court denied Neuschafer's pro se petition *without* prejudice, and refused to

appoint counsel, on the ground that the petition failed to conform to the state's requirement that it allege specific facts which, if true, would entitle the petitioner to relief.

On October 28, 1985, with Neuschafer's execution date rapidly approaching, the public defender, on his own initiative and without court appointment, filed a motion in the state trial court for a 120-day stay of the execution date. In a supporting affidavit, the public defender advised the state trial court that Neuschafer had yet to receive the assistance of counsel in reviewing the trial record to determine whether any meritorious constitutional claims could be raised in state postconviction proceedings.

On October 30, 1985, the state trial court denied the motion for a stay of execution. On the same day, less than a week before the November 5, 1985 execution date, the *state trial court* appointed the state public defender to represent Neuschafer.

The state public defender immediately appealed the state trial court's ruling denying a stay of the imposition of the extreme penalty to the Nevada Supreme Court. On November 1, 1985, two days after the state trial court had denied Neuschafer's motion for a continuance and a stay of his scheduled execution date, the Nevada Supreme Court refused to stay the execution and dismissed the appeal. Later that same day, Neuschafer filed his first federal petition for writ of habeas corpus.

The federal petition alleged one constitutional claim—that state law enforcement officers violated Neuschafer's privilege against self-incrimination when they proceeded to interrogate him notwithstanding his request for counsel. The petition was accompanied by motions for the appointment of counsel and for a stay of execution.

On November 4, 1985, the district court stayed the scheduled execution, appointed the federal public defender to represent Neuschafer, and granted Neuschafer until November 25, 1985 to file an amended petition alleging all claims that could be raised in federal court. On November 25, 1985,

counsel filed in the district court a supplemental petition for habeas corpus realleging Neuschafer's claim of unconstitutional police interrogation. The supplemental petition also presented the remaining constitutional claims that Neuschafer had earlier exhausted on direct appeal to the Nevada Supreme Court.

No unexhausted claims of federal constitutional error were included in the supplemental petition. The supplemental petition, thus, complied with the rule that federal habeas petitions allege only claims that have been exhausted in state court. *See* 28 U.S.C. § 2254(b) (1982) (petition shall not be granted unless applicant has exhausted state remedies that are available and effective in protecting applicant's rights); *Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 1202, 71 L.Ed.2d 379 (1982) ("state remedies must be exhausted except in unusual circumstances"). The record is silent as to whether Neuschafer or his attorney knew of any unexhausted federal constitutional claims prior to the filing of the supplemental petition in the district court.

The law is clear that a finding of abuse of the writ is warranted only when the petitioner has deliberately and knowingly withheld certain claims for the purpose of gaining successive hearings. The Court addressed this point in some detail in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). The Court stated:

> [F]ull consideration of the merits of the new application can be avoided only if there has been an abuse of the writ.... Thus, for example, if a prisoner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application, *in the hope of being granted two hearings rather than one or for some other such reason,* he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.

*Id.* at 17–18, 83 S.Ct. at 1078–79 (emphasis added).

Congress codified the *Sanders* holding in Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1982) [hereinafter Rule 9(b)]. Rule 9(b) provides: "A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ." The Advisory Committee Note explains that Rule 9(b) "requires that the judge find petitioner's failure to have asserted the new grounds in the prior petition to be *inexcusable.*" Rule 9(b) Advisory Committee Note (emphasis added).

In *Rose v. Lundy,* the Supreme Court held that a "mixed" habeas petition, *i.e.,* a petition alleging both exhausted and unexhausted claims, must be dismissed by the district court. 455 U.S. at 522, 102 S.Ct. at 1205. Justice O'Connor observed, in dictum, that "a prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claims risks dismissal of subsequent federal petitions." *Id.* at 521, 102 S.Ct. at 1205. A plurality of the Court concurred in this dictum. Four other justices, however, suggested that a second petition alleging new claims should not be dismissed on the ground of abuse of the writ unless petitioner deliberately withheld the claims, for an improper purpose, from his first petition. *See id.* at 529, 102 S.Ct. at 1209 (Blackmun, J., concurring in the judgment) ("[S]ubsequent petitions may be dismissed, as Justice BRENNAN observes, only if the prisoner has 'abused the writ' by deliberately choosing, for purposes of delay, not to include all his claims in one petition."); *id.* at 536, 102 S.Ct. at 1212 (Brennan, J., joined by Marshall, J., concurring in part and dissenting in part) ("*Sanders* made it crystal clear that dismissal for 'abuse of the writ' is *only* appropriate when a prisoner was free to include all of his claims in his first petition, but *knowingly* and *deliberately* chose not to do so in order to get more than 'one bite at the apple.' "); *id.* at 538, 102 S.Ct. at 1213 (White, J., concurring in part and dissenting in part) ("[I]f the judge

rules on those issues that are ripe and dismisses those that are not, I would not tax the petitioner with abuse of the writ if he returns with the latter claims after seeking state relief.").

If *Rose v. Lundy* left any doubt concerning the standard to be applied in determining whether withholding of claims constitutes abuse of the writ, this court resolved the doubt in *Richmond v. Ricketts,* 774 F.2d 957 (9th Cir.1985). We declared: "Previously unadjudicated claims must be decided on the merits unless the petitioner has made a conscious decision deliberately to withhold them, is pursuing 'needless piecemeal litigation,' or has raised the claims only to 'vex, harass, or delay.' *See Sanders,* 373 U.S. at 18 [83 S.Ct. at 1078]." *Id.* at 961 (parallel citation omitted).

As the majority correctly notes, our decision in *Tannehill* indicates that a petitioner may not be charged with making "a conscious decision deliberately to withhold" a claim if the reason for the withholding is a concern that inclusion of the claim will prompt the federal court to dismiss the entire petition. We stated in *Tannehill:*

> [T]he district district court found the petition an abuse of the writ.... [I]t appears that Tannehill was seeking collateral relief from the state courts, which was finally denied only a few months before he filed this petition. It may be that he believed in good faith, perhaps correctly, that his [unexhausted] claims for federal relief would have been barred until that time by failure to exhaust state remedies. If so, he did not "deliberately" abuse the writ. *See Sanders, supra; Wong Doo v. United States,* 265 U.S. 239 [44 S.Ct. 524, 68 L.Ed. 999] (1924).

451 F.2d at 1324 (parallel citation omitted).

The decision in *Rose v. Lundy* instructs attorneys and petitioners that they should not file habeas petitions in federal court alleging claims that have yet to be exhausted in state court. In light of *Rose v. Lundy,* therefore, petitioners always have a valid reason for withholding unexhausted claims from a federal habeas petition—inclusion of the claims will render the petition "mixed" and mandate its dismissal.

Our decision in *Tannehill* properly holds, in effect, that attorneys and petitioners will not be vulnerable to charges that they have abused the writ *merely* because they have complied with the requirement of *Rose v. Lundy* that unexhausted claims be withheld from habeas petitions presented to the federal courts.

A petitioner who is able, prior to his execution date, to identify and exhaust all his federal claims before filing his initial habeas petition in federal court can readily comply with *Rose v. Lundy.*

In *Tannehill,* we concluded that the mere fact that a state prisoner files an exhausted claim in federal court prior to exhausting all of his federal constitutional claims in state court is not sufficient, standing alone, to show an abuse of the writ. Our decision in *Tannehill* does not preclude a finding of abuse of the writ under such circumstances, however, if the record shows that the petitioner was not acting in good faith or was deliberately seeking to present his claims in a piecemeal fashion.

A state prisoner who (1) has been denied a continuance to exhaust all of his claims in the state court, and (2) faces execution in four days, has no practical choice but to seek a stay from the federal court before the executioner makes moot his right to a trial free of constitutional error. As noted above, section 2254 and *Rose v. Lundy* require the petitioner to limit his allegations to claims that have been exhausted in state court. The holding in *Rose v. Lundy,* however, provides no guidance to a person faced with Neuschafer's life or death option after his requests for time to exhaust his claims have been denied by the state's highest court.

The record in the matter now before us demonstrates that Neuschafer had a valid, indeed compelling, reason for filing his first federal petition before exhausting all his claims—his execution was imminent, and the state court had refused to grant a stay of execution to permit his counsel to review the record and to exhaust any remaining claims. *See Richmond,* 774 F.2d at 960, 961 (petitioner was "compelled" to

file second federal petition when he was resentenced to death following successful attack on death penalty statute in his first petition; petitioner's purpose in filing second petition was not solely to vex, harass or delay, where he "challenged the reimposition of his sentence in a good faith attempt to avoid the penalty of death"). Given the imminence of his scheduled execution, the only way Neuschafer could assure himself a hearing in federal court on his constitutional claims was by immediately filing a habeas petition.

Neuschafer's petition properly alleged only those claims that had already been exhausted. Allegation of other claims would have been a completely idle act, since Neuschafer would have had to amend the petition to delete such claims. *See Rose v. Lundy*, 455 U.S. at 520, 522, 102 S.Ct. at 1204, 1205 (district courts must dismiss petitions alleging both exhausted and unexhausted claims; petitioner "can always amend the petition to delete the unexhausted claims," then resubmit it). Because he faced death if he did not proceed with his exhausted claims, Neuschafer had no alternative but to act precisely as he did.

Under the perilous circumstances facing Neuschafer when he filed his original petition in the district court, Neuschafer did not abuse the writ in pursuing his exhausted claims prior to identifying and exhausting his remaining federal constitutional claims. Accordingly, when counsel later discovered and exhausted additional federal constitutional claims, he did not abuse the writ in filing a second federal petition alleging the subsequently exhausted claims.

This is not a case in which the petitioner intentionally elected not to seek postconviction relief until long after the affirmance of his conviction on direct appeal. *Cf. Antone v. Duggar*, 465 U.S. 200, 206 n. 4, 104 S.Ct. 962, 965 n. 4, 79 L.Ed.2d 147 (1984) (per curiam) (although counsel was appointed to prepare federal habeas petition "when execution was imminent" and had little time to familiarize himself with the case, omission of exhausted claims from petition was inexcusable because petitioner inexplicably "allowed almost two years to elapse between the affirmance of his conviction and the filing of his first motion for postconviction relief in the state courts"). When a petitioner has ample time to seek collateral relief but inexplicably waits until the eve of execution to do so, he should not be heard to complain that time constraints prevented his counsel from identifying and exhausting all claims in time to include them in a single federal habeas petition.

The procedural history of this case, as summarized at the outset of this opinion, readily refutes any suggestion that Neuschafer has pursued "needless piecemeal litigation" or has acted with the intent to "vex, harass, or delay." The severely limited time constraints under which the state public defender was forced to work resulted, not from any dilatory tactics on Neuschafer's part, but from the Nevada Supreme Court's refusal to grant newly appointed counsel's request for a reasonable continuance and a stay of execution. Had the Nevada Supreme Court granted Neuschafer's counsel a reasonable opportunity to review the trial record, he could have filed one federal habeas corpus petition after identifying and exhausting Neuschafer's remaining federal constitutional claims in state court.

The majority suggests that because the district court granted Neuschafer's newly appointed federal counsel 21 days within which to supplement Neuschafer's pro se petition, there is no merit to the argument that the press of time prevented counsel from identifying potential constitutional claims. *See* maj. op. *supra* at 1476 n. 11. I respectfully disagree. The state public defender had previously indicated to the state court that 120 days would be needed to complete a thorough review of the record. Assuming that this was a reasonable request (nothing in the record suggests otherwise), the 21-day extension granted to the federal public defender seems, in contrast, totally inadequate. In any event, counsel is surely entitled to more than 21 days within which to review the entire trial record in a capital case for constitutional errors, file a supplement to the pending petition, and prepare

for an evidentiary hearing in the district court in a case where, as here, his client faces death.

Even assuming that 21 days was a sufficient length of time within which to review the record, I do not agree with the implication in the majority's opinion that counsel was under a duty to alert the court to the existence of any unexhausted claims and to request that the federal proceedings be held in abeyance pending exhaustion of such claims in the state system. *See* maj. op. *supra* at 1474 n. 5, 1476 nn. 8, 11. The district court granted counsel 21 days within which to file a supplemental petition alleging all the claims that could then be raised in federal court. Counsel fully complied with the court's direction. If, at the conclusion of the 21–day period, counsel was aware of any unexhausted claims, he properly omitted them from the supplemental petition. Inclusion of such claims would have mandated dismissal of the "mixed" petition, and thus termination of the stay of execution, pursuant to *Rose v. Lundy*. Surely counsel cannot be faulted for pursuing the only course of action through which Neuschafer could hope to obtain a stay of execution and a hearing on his exhausted claims.

The problem presented in this case could have been avoided if the district court, in granting a 21–day extension, had directed Neuschafer's counsel to review the record and *to inform the court whether any claims remained unexhausted.* The court could then have given Neuschafer the choice of either abandoning such unexhausted claims or requesting that the federal proceedings be held in abeyance until such time as the claims had been exhausted in the state system. Had the court "flushed out" the unexhausted claims in that manner, Neuschafer's second petition would have been unnecessary.

In future cases such as this—where a petitioner is compelled to file a habeas petition alleging exhausted claims at the eleventh hour, because the state court has refused to grant counsel sufficient time to exhaust all claims in state court—the district court can avoid the filing of a subsequent petition by issuing an order requir-ing the prisoner's counsel, within a reasonable time, to review the trial record and inform the court whether there are any other exhausted or *unexhausted* claims. The court should then give petitioner the choice of abandoning the unexhausted claims or exhausting them in state court before proceeding with a hearing on all exhausted claims.

Adherence to this procedure will eliminate the possibility that petitioners will "exhaust their state remedies one by one and ... bring a new federal habeas petition each time they exhaust a state claim." Op. at 1475. Once counsel has disclosed to the court all *exhausted* claims, the court may require the petitioner either to amend the pending petition to include such claims or to abandon them on the record. Similarly, once counsel has disclosed all *unexhausted* claims, the court may require the petitioner to exhaust them in the state system or to abandon them on the record. The court need not hold a hearing on the pending petition until all disclosed claims have been either exhausted or abandoned on the record.

If this procedure is followed, the filing of a second petition alleging a new federal constitutional claim will be inexcusable, and an abuse of the writ, unless petitioner is able to allege a change in the law, a newly discovered fact, or ineffective assistance of counsel in connection with the first petition.

For the foregoing reasons, I concur in the decision to reverse the district court's order dismissing Neuschafer's second petition. I would remand this matter with instructions that the district court hold an evidentiary hearing to determine whether Neuschafer or his counsel knowingly withheld unexhausted claims from the supplemental petition filed November 25, 1985 with the intent to engage in "needless piecemeal litigation" or "to vex, harass or annoy."