**Patrick Bruce GORDON, Petitioner,**

v.

**Daniel VASQUEZ, Warden, and Daniel Lungren, Attorney General of the State of California, Respondents.**

**No. Civ. S–91–882 LKK/PAN.**

United States District Court,
E.D. California.

July 25, 1994.

Malcolm S. Segal, James R. Kirby II, Segal & Kirby, Sacramento, CA, for petitioner.

Ward A. Campbell, William George Prahl California Atty. Gen., Sacramento, CA, for respondent.

1. Local Rule 191(d) provides for appointment of counsel in death penalty habeas cases, and 191(h)(2) provides for temporary stays of execution pending appointment of counsel. *See* n. 7, *infra.*

2. That rule provides: "If the petition indicates that there are unexhausted claims for which a state court remedy is still available, petitioner

*ORDER*

KARLTON, Chief Judge Emeritus.

Petitioner, a state prisoner condemned to death, filed pro se a petition for habeas corpus. The matter was referred to a magistrate judge, *see* 28 U.S.C. § 636(b)(1), Local Rules 302(c)(17), 303, 304, who granted permission to proceed in forma pauperis, stayed the execution, and initiated the process of obtaining counsel for petitioner. *See* Local Rule 191(d), (h)(2).[1] In due course, counsel were appointed to represent petitioner and, after filing an amended petition, they moved for investigative and expert funds. The magistrate judge could not determine whether petitioner's claims had been exhausted and apparently for that reason denied the request.

Petitioner's second request for investigative funds was also denied, this time specifically on the basis that the petition contained unexhausted claims. Shortly thereafter, the magistrate judge formally found that the petition contained unexhausted claims and recommended that these proceedings be stayed pursuant to Local Rule 191(h)(5).[2] The recommendation relative to a stay was adopted by this court.

Petitioner, through his federally appointed attorneys, then applied to the California Supreme Court for appointment to pursue his state remedies and requested funds from that court to investigate potential habeas issues. Although counsel were appointed, the request for funds was denied. Thereupon counsel for petitioner reapplied to this court for funds for investigation. The magistrate judge summarily denied the request, stating:

Petitioner has requested funds to investigate habeas corpus issues. This proceeding is presently stayed pending the completion of proceedings in the California Supreme Court. E.D.Cal., L.R. 191(h)(5); Order May 5, 1993. Accordingly, it is

will be granted a sixty (60) day stay of execution in which to seek a further stay from the state court in order to litigate the unexhausted claims in state court. During the proceedings in state court, the proceedings on the petition will be stayed. After the state court proceedings have been completed, petitioner may amend the petition with respect to the newly exhausted claims."

ORDERED that petitioner's request for investigative funds, filed June 28, 1993, is denied.

Order filed June 29, 1993.

Petitioner then sought reconsideration from this court, arguing that the magistrate judge's order was contrary to law. He contends that 21 U.S.C. § 848(q) mandates authorization of investigative funds upon a finding that a request is reasonably necessary for the representation of federal death penalty habeas petitioners, notwithstanding the fact that the funds are for the express purpose of investigating facts on unexhausted claims to be presented to a state court.

This court ordered further briefing on the issue from both petitioner and the Attorney General of the State of California. Thereafter, I concluded that the order directed to the Attorney General was inappropriate since, under the statute, consideration of the request for investigative fees is an *ex parte* proceeding, which has been interpreted to mean an *in camera* proceeding. *See* 21 U.S.C. § 848(q)(9); *Lawson v. Dixon*, 3 F.3d 743, 751 (4th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1208, 127 L.Ed.2d 556 (1994) (the plain language of 21 U.S.C. § 848(q)(9) providing for *ex parte* proceedings should not be overlooked simply because the court prefers all such motions to be handled on the record); *Guide to Judiciary Policies and Procedures*, Vol. VII, § 3.03 (*ex parte* application shall be heard *in camera*).[3] *But see McKinney v. Paskett*, 753 F.Supp. 861, 863 (D.Idaho 1990) (petitioner required to show specifically the reason why services are necessary before being allowed an *ex parte* hearing).

Because I had concluded that the State was not an interested party, I ordered its briefing and its appearance relative to the Motion to Reconsider stricken. For the same reason, the court's resolution of the issue was ordered sealed. The matter was then remanded to the magistrate judge for further proceedings consistent with the court's sealed opinion.

Upon return to the magistrate judge, the State moved, inter alia, for a recommendation to this court for interlocutory appeal of the order striking the State's appearance and sealing the order disposing of the motion. Instead, the magistrate judge has filed Findings and Recommendations that the order be unsealed. He suggests that while the amount and use of funds must be considered *ex parte*, the fact that funds are sought and a determination relative to such a request need not be held in confidence. The court is satisfied that the distinction drawn by the magistrate judge is sensible. The court also notes that since its decision, the United States Supreme Court has issued its opinion in *McFarland v. Scott, Director, Texas Dep't of Criminal Justice, Institutional Div.*, —— U.S. ——, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994), which indirectly sheds some light on the issues resolved by the court. Given the magistrate judge's recommendation and the decision in *McFarland*, the court will issue a new, public and slightly revised opinion in this matter.

## I

### *STANDARD OF REVIEW*

Because federal habeas proceedings are civil in nature,[4] the power of the district court to refer matters for review by a magistrate judge is quite broad. Thus, a district court judge may designate a magistrate judge to hear and determine any non-dispositive pretrial matters brought by a person seeking habeas relief, *see* 28 U.S.C. § 636(b)(1)(A); Local Rule 302(c)(17), and may refer dispositive motions for Findings and Recommendations. 28 U.S.C. § 636(b)(1)(B); Local Rule 302(a) & (c)(17). The standard employed by the district court in reviewing decisions of the magistrate

---

**3.** That section interprets an analogous section in the Criminal Justice Act. *See In re Berger*, 498 U.S. 233, 111 S.Ct. 628, 112 L.Ed.2d 710 (1991) (adopting guidelines as an interpretive aid).

**4.** Although the proceedings under which petitioner was convicted in state court were criminal, it has long been established that habeas proceedings in federal court are civil in nature. *Browder v. Director, Dep't of Corrections of Illinois*, 434 U.S. 257, 269, 98 S.Ct. 556, 563, 54 L.Ed.2d 521 (1978), *citing Fisher v. Baker*, 203 U.S. 174, 181, 27 S.Ct. 135, 136, 51 L.Ed. 142 (1906).

judge depends upon the character of the underlying decision.

■■■ Non-dispositive pretrial motions referred to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) are reviewed under a clearly erroneous or contrary to law standard. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 303(f); *United States v. Raddatz*, 447 U.S. 667, 673, 100 S.Ct. 2406, 2411, 65 L.Ed.2d 424 (1980). On the other hand, a magistrate judge's determination concerning matters referred pursuant to 28 U.S.C. § 636(b)(1)(B) are for the most part reviewed *de novo*. Thus, the district court reviews *de novo* those portions of the proposed findings of fact to which objection has been made, 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982), and the magistrate's conclusions of law. *Barilla v. Ervin*, 886 F.2d 1514, 1518 (9th Cir.1989), *citing Britt v. Simi Valley Unified School Dist.*, 708 F.2d 452, 454 (9th Cir.1983). The court may, however, assume the correctness of that portion of the proposed findings of fact to which no objection has been made and decide the motion on the applicable law. *See United States v. Remsing*, 874 F.2d 614, 617 (9th Cir.1989), *citing Orand v. United States*, 602 F.2d 207, 208 (9th Cir.1979).[5]

The court is not bound to adopt the magistrate's Findings and Recommendations; on the contrary, the court must exercise "sound judicial discretion" in making its own determination on the record. *Raddatz*, 447 U.S. at 675–76, 100 S.Ct. at 2412. The court may accept, reject, or modify, in whole or in part, the magistrate's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); *Remsing*, 874 F.2d at 617.

In the matter at bar, petitioner seeks review of the magistrate judge's denial of fees, a non-dispositive pretrial order. Accordingly, the court employs the "clearly erroneous or contrary to law" standard of review. Where, as here, there are no disputed issues of fact and the question before the court is thus purely legal in nature, the standards of

review under 28 U.S.C. § 636(b)(1)(A) and 28 U.S.C. § 636(b)(1)(C) converge. That is, under either standard of review, the court must determine whether the magistrate judge's conclusions of law are right or wrong.

## II

### *THE RIGHT TO INVESTIGATIVE FUNDS*

The magistrate judge's denial of the requested funds in this case relied exclusively on the fact that, pursuant to Local Rule 191(h)(5), a stay had issued to permit the exhaustion of state claims. Because of the cryptic nature of the order, it is unclear why the existence of a stay was viewed as precluding the granting of fees. Since the magistrate judge apparently did not consider the merits of the request, however, I must conclude that he thought it was improper to do so. As I explain below, two possible procedural and one possible substantive reason present themselves as justifications for such a conclusion. I consider each reason seriatim.

### A. *Stays*

■ One possible reason that the magistrate judge might conclude that he should not entertain a motion for investigative fees is because this court had entered the stay in effect at the time the motion was made. *See Reynaga v. Cammisa*, 971 F.2d 414, 416–17 (9th Cir.1992) (magistrate judge lacked authority to enter stay in habeas case). If that was his reasoning, the magistrate judge, upon denying the motion, should have explained that it should be directed to the district court. Be that as it may, by virtue of the motion to reconsider the matter is now before this court subject to the court's further order, and thus the stay is no impediment to ordering fees if it is otherwise appropriate.

The purpose of issuing a stay of a federal court action rather than dismissing it in favor of state court proceedings is to protect a litigant's federal rights during the pendency

---

5. The failure of a party to file objections does not relieve the district court of its obligation to give *de novo* review of conclusions of law. *Barilla*, 886 F.2d at 1518.

of the state court proceedings. *See, e.g., Attwood v. Mendocino Coast Dist. Hospital,* 886 F.2d 241, 243 (9th Cir.1989) (purpose of doctrine is to ensure federal forum remains open if the state forum proves to be inadequate); *and see* Annotation, *Stay of Action in Federal Court Until Determination of Similar Action Pending in State Court,* 5 A.L.R.Fed. 10, 105 (1970) (same). In the matter at bar, the state court has refused to provide petitioner with the resources assertedly necessary to investigate his claim. Thus, if petitioner has a federal right to such resources, issuance of an order providing them is consistent with the reasons for retention of jurisdiction in the first place. *See, e.g., Mottolese v. Kaufman,* 176 F.2d 301 (2d Cir.1949) (federal court stayed case in favor of state court proceeding on the condition that the Federal Rules relative to depositions were applied in state court).

**B. *Unexhausted Claims***

■ A second possible reason suggested by the magistrate's refusal to grant fees prior to the stay may relate to the fact that the amended petition contains unexhausted claims. In *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), the Supreme Court held that a district court must dismiss a petition for habeas corpus containing unexhausted claims. The magistrate judge may have thought that by virtue of *Rose,* he was without power to order investigative fees to pursue unexhausted claims on the premise that dismissal is required. That is not the rule in the Ninth Circuit. The circuit has held that:

6. A plurality in *Rose* argued that when a petitioner elects to proceed on the exhausted claims, later petitions containing subsequently exhausted claims were subject to dismissal as an abuse of the writ. The *Neuschafer* court declined to follow this suggestion, believing that the circuit's earlier decision in *Tannehill v. Fitzharris,* 451 F.2d 1322 (9th Cir.1971), precluded a finding that a petitioner who withholds unexhausted claims from the first federal petition does so deliberately, thereby abusing the writ. In a concurring opinion, Judge Alarcon suggested a procedure to prevent an "uncontrollable succession of petitions." *Neuschafer,* 860 F.2d at 1478 (Alarcon, J., concurring). That procedure was adopted by this district, *en banc. See Ainsworth v. Vasquez,* 759 F.Supp. 1467 (E.D.Cal.1991).

When a petitioner has not exhausted his state remedies before filing a federal habeas petition, a district court may hold the federal petition in abeyance, issue a stay of execution, and allow the petitioner an opportunity to exhaust his state remedies.

*Neuschafer v. Whitley,* 860 F.2d 1470, 1472 n. 1 (9th Cir.1988), *cert. denied,* 493 U.S. 906, 110 S.Ct. 264, 107 L.Ed.2d 214 (1989).[6] Local Rule 191(h), a product of the Ninth Circuit Death Penalty Task Force,[7] was an attempt to accommodate both Supreme Court and Ninth Circuit precedent, a duty of the Task Force, this court and the magistrate judge.[8]

In sum, where there are both exhausted and unexhausted claims tendered in a petition, the court may grant a stay pursuant to Local Rule 191(h) rather than dismissing the pending habeas case. It follows that since the court retains jurisdiction when a matter is stayed, *see Burlington Northern Railroad Co. v. Crow Tribal Council,* 940 F.2d 1239, 1245 n. 3 (9th Cir.1991) (federal courts may stay proceedings and retain jurisdiction pending exhaustion of tribal court remedies), the stay does not affect the court's jurisdiction to grant fee requests.

Having disposed of the two possible procedural bars, I now turn to the issue of whether the statute permits the granting of investigative fees relative to unexhausted claims.

**C. *The Statute***

■ The issue before the court is whether 21 U.S.C. § 848(q) authorizes the district

7. In 1987, the Honorable James Browning, then Chief Judge of the Ninth Circuit, appointed a task force to consider the problems likely to be experienced within the circuit by virtue of the impending filing of a large number of death penalty habeas cases in the district courts. The task force was composed of representatives of the federal judiciary, various state attorney generals and defense counsel. Among its accomplishments, the task force produced a model local rule for the district courts. This district adopted that rule.

8. The district court and its adjunct magistrate judges, as subordinate entities bound by the rule of precedent, must conform their understanding of Supreme Court decisions to the interpretation of those decisions by the Ninth Circuit.

court to provide funds to a federal habeas petitioner to investigate unexhausted claims which are to be presented to a state court. The question is one of statutory interpretation. As with any such question, a district court must first determine whether there is binding authority construing the statute. *Tello v. McMahon,* 677 F.Supp. 1436, 1441 (E.D.Cal.1988). In the matter at bar, neither the Supreme Court nor the Ninth Circuit has spoken to the issue at bar. Accordingly, the court must undertake its explication employing the traditional methods of statutory construction. *Id.*

Analysis commences with application of the plain meaning rule. If the meaning of the statute is clear, no further construction is required, *id.,* for "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain,* 503 U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992); *see also Church of Scientology v. United States Dep't of Justice,* 612 F.2d 417, 421 (9th Cir.1979) ("Congress does mean what it says and thus the statutory language is normally the best evidence of congressional intent"). If the language of the statute is ambiguous, resort may be had to textual and extrinsic aids of construction. *Dodd v. John Hancock Mut. Life Ins. Co.,* 688 F.Supp. 564, 569 (E.D.Cal. 1988).

The statute at issue plainly commands federal appointment of attorneys for indigents seeking federal habeas corpus to review a state proceeding resulting in imposition of a sentence of death.[9] It also commands that appointed counsel represent the defendant in all post-petition proceedings without regard to forum.[10] Finally, it just as plainly commands the court to pay for support services, including investigative services, which are reasonably necessary for the adequate representation of the defendant.[11]

The statute's plain meaning concerning the payment of fees without reference to the forum is made clear by the congressional directive that federally appointed counsel represent the defendant in competency and clemency matters, *see* 21 U.S.C. § 848(q)(8). Those proceedings ordinarily occur in state forums after the conclusion of the federal habeas case. *See Hill v. Lockhart,* 992 F.2d 801, 803 (8th Cir.1993) (the statute requires provision of attorneys for competency and clemency proceedings even though they are "frequently [ ] not commenced until state *and* federal post conviction relief have been denied").

The only source of even potential ambiguity derives from the use of the term "defendant" rather than "petitioner" in the pertinent statute. That usage might suggest that only those facing capital punishment by virtue of conviction in a federal court are entitled to investigative fees. That possibility is enhanced by the fact that subsections 1, 2, and 3 of section 848(q) address the appeal rights of those suffering the imposition of a death sentence after conviction in federal court. Nonetheless, the argument simply cannot lie. Included among those entitled to appointment of counsel under the statute is a

---

9. "In any post conviction proceeding under section 2254 or 2255 of Title 28, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with paragraphs (5), (6), (7), (8), and (9)." 21 U.S.C. § 848(q)(4)(B).

10. "[E]ach attorney so appointed shall represent the defendant throughout every subsequent stage of available judicial proceedings, including pre-trial proceedings, trial, sentencing, motions for new trial, appeals, applications[ ] for writ of certiorari to the Supreme Court of the United States, and all available post-conviction process,

together with applications for stays of execution and other appropriate motions and procedures, and shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." 21 U.S.C. § 848(q)(8).

11. "Upon a finding in *ex parte* proceedings that investigative, expert or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or sentence, the court *shall authorize* the defendant's attorneys to obtain such services on behalf of the defendant and shall order the payment of fees and expenses therefore, under paragraph (10)". 21 U.S.C. § 848(q)(9) (emphasis added).

"defendant" who "seek[s] to vacate or set aside a death sentence" by bringing a "proceeding under § 2254." 21 U.S.C. § 848(q)(4)(B). Section 2254, of course, refers to habeas petitions following state conviction. *See also Lawson v. Dixon,* 3 F.3d at 751 n. 5 ("Congress clearly intended to create a counsel and expert-services guarantee in federal habeas review of state-imposed death sentences.").

Section 848(q)(4)(B) is clear and unambiguous. Such unambiguous language controls the court's interpretation, absent "a clearly expressed legislative intent to the contrary." *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983). *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (unless Congress has clearly indicated that its intentions are contrary to the words it employed in the statute, the words of the statute are both the starting and ending point of the interpretation). I now turn to the question of whether Congress has expressed a contrary intention.

Section 848(q) of Title 21 was added to the code in 1988 as part of the Anti–Drug Abuse Act. There appear to have been no accompanying Senate or House reports. *See* 1988 U.S.C.C.A.N. 5937. Nor does there appear to be any other extra statutory expression of legislative intent. Under these circumstances, there simply is no clearly expressed legislative intent contrary to the statute's plain meaning.

Despite the statute's apparent command, at least four courts have opined that section 848(q)(8)'s provisions do not reach proceedings seeking to exhaust state habeas remedies after the filing of a federal petition containing both exhausted and unexhausted claims. *See In re Lindsey,* 875 F.2d 1502, 1506 (11th Cir.1989); *Hill v. Lockhart,* 992 F.2d 801 (8th Cir.1993); *Coleman v. Vasquez,* 771 F.Supp. 300, 304 n. 5 (N.D.Cal.1991); *McKinney v. Paskett,* 753 F.Supp. at 865. Although four cases may initially appear impressive, examination suggests that they are weak precedent.

I begin by noting that the relevant discussions in all four cases are dicta. *Lindsey* purports to address the issue of the granting of fees where there are no viable federal claims; [12] in *Hill,* the issue resolved was that attorney's fees were, under appropriate standards, recoverable for a clemency hearing; in *Coleman,* the court resolved that fees for a *McCleskey* investigation on an exhausted petition were available under the statute; [13] finally, although *McKinney* tendered the issue at bar, the court found the issue moot since petitioner was not entitled to return to the state court.

Also undermining the *Lindsey* line of cases is the fact that all three cases adopting its dicta did so without further analysis. Thus the persuasive effect of these later cases ultimately turns on the persuasiveness of that case. Yet, as I now explain, *Lindsey*'s reasoning is hardly compelling.

The *Lindsey* court tendered three reasons for reaching its conclusion—a parade of horribles, the asserted novelty of the result, and an asserted uncertainty concerning the statute's language. Upon examination, each argument is simply unconvincing.

The *Lindsey* court argued that permitting the payment of fees "under subsection

---

12. In *Lindsey,* petitioner sought appointment of an attorney and psychiatrist on a petition which contained only one unexhausted claim. The court concluded that there was no "proceeding under 28 U.S.C. § 2254," and thus that 21 U.S.C. § 848(q) was inapplicable. *In re Lindsey,* 875 F.2d at 1506. The Supreme Court's recent decision in *McFarland,* —— U.S. ——, 114 S.Ct. 2568 (1994), may be read as casting some doubt on the holding in *Lindsey.* Even if this is not the case, however, *Lindsey*'s rationale is inapplicable in this circuit to cases such as that at bar, where the petition contains both exhausted and unexhausted claims and thus falls within *Neuschafer.*

13. In *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), the Supreme Court held that the filing of a federal habeas petition raising claims not raised in a previous petition may be treated as an abuse of the writ and thus a petitioner must ordinarily show cause why he failed to raise the claim initially and demonstrate prejudice arising from the court's failure to address the new claim. Counsel for petitioners view *McCleskey* as, in effect, imposing a new burden to ensure that all possible claims have been identified and exhausted in the first petition.

848(q)(8) would have the practical effect of supplanting the state-court systems for the appointment of counsel in collateral review cases." *In re Lindsey*, 875 F.2d at 1506. It thought such a holding "would encourage state prisoners to ignore ... the proper sequence, developed from concerns for federalism, for seeking collateral relief from state-court judgments in death-penalty cases." *Id.*[14] This speculation concerning the future course of collateral litigation appears to be wholly unwarranted. As *Hill* demonstrates, a proper regard for the statutory language making the provision of expenses dependent on "reasonable necessity" precludes the granting of expenses when the state court will provide the expenses sought in the federal proceeding. *See Hill*, 992 F.2d at 803 (services not reasonably necessary unless request made pursuant to a non-frivolous federal habeas proceeding and state law provides no avenue to obtain the services). Thus if a determination of reasonable necessity turns, at least in part, on the unavailability of state-provided fees, the petitioner gains no advantage in circumventing application to the state court when that court will in fact provide fees and expenses.

A second reason tendered was the novelty of the result. This court is uncertain as to what the *Lindsey* court regarded as novel. Certainly the federal government has long financed civil litigation in the state courts. *See* 42 U.S.C. §§ 2996–2996*l* (Legal Services Corporation Act of 1974). Moreover, as the Ninth Circuit has explained, habeas proceedings are

> [D]ramatically different from any other civil action ... [and] [a]s a result, [we] are not bound to systemically apply traditional rules governing civil proceedings when to do so would be inconsistent with the overriding purposes of the federal habeas corpus statute.

*Brown v. Vasquez*, 952 F.2d 1164, 1169 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992).[15] What is true of the federal judiciary is, *a fortiori*, true for the national legislature. *See supra*, n. 17.

Finally, the *Lindsey* court suggested that a greater degree of clarity in expression is required.[16] Perhaps it is true that plain meaning, like beauty, is in the eye of the beholder. With the greatest of respect, however, I must declare my own view that the statute's meaning is plain and provides for investigative fees if the costs are reasonably necessary.[17] Put bluntly, it appears to this

---

14. The court suggested that petitioners "for no reason other than to gain the assistance of federally appointed counsel and experts throughout all stages of collateral review (both state and federal), would ignore the exhaustion requirement and, before seeking state remedies, futilely file for federal habeas relief. Only after procuring a federally appointed lawyer would state inmates have an incentive to set upon the right track in pursuit of state remedies." *In re Lindsey*, 875 F.2d at 1506–07.

15. In *Brown*, the circuit looked with favor on the task force's effort to address another special problem presented to district courts discharging their responsibilities under 28 U.S.C. § 2254. The court approved of the local rule which provided that district courts had jurisdiction to stay an execution upon receipt of a request for counsel to assist in preparation of a petition, finding it a habeas proceeding within the meaning of 28 U.S.C. § 2251. *Brown*, 952 F.2d at 1165–69. Both the Local Rule and *Brown* were vindicated in *McFarland*, — U.S. —, 114 S.Ct. 2568 (1994).

16. "If Congress had intended so novel a result, we think it would have stated so in unmistakable terms, for example, by expressly providing for the appointment of counsel at federal expense for all inmates seeking collateral review of death sentences, regardless of whether such review was sought in state or federal court." *In Re Lindsey*, 875 F.2d at 1507.

17. As noted in the text, the High Court in *McFarland* recently faced the question of whether a request for counsel in a federal death penalty habeas case constituted a proceeding sufficient to stay the state imposed death penalty. The Court explained relative to the federal proceedings that "[o]n its face, this statute grants indigent capital defendants a mandatory right to qualified legal counsel and related services 'in any [federal] post conviction proceeding.'" *McFarland*, — U.S. at —, 114 S.Ct. at 2571. The Court further explained that "[t]he services of investigators and other experts may be critical in the preapplication phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified. Section 848(q)(9) clearly anticipates that capital counsel will have been appointed under § 848(q)(8) before such need for such technical assistance arises ... Congress thus established a right to preapplication legal assistance for capital defendants in federal habeas proceedings." *Id.* While the issue tendered here is distinct from that tendered in *McFarland*, the same rationale applies to both issues.

court that the language is plain—it is the result which *Lindsey* faults. It is fundamental, however, that when Congress has spoken within its constitutional powers, the courts are bound. As the High Court has explained, when "Congress' intent is ... plain ... policy arguments ... must be addressed to the body that has the authority to amend the legislation, rather than one whose authority is limited to interpreting it." *Laborers Health and Welfare Trust Fund For Northern California v. Advanced Lightweight Concrete Co., Inc.*, 484 U.S. 539, 551, 108 S.Ct. 830, 837, 98 L.Ed.2d 936 (1988).

This court feels constrained to note that even the policy argument upon which *Lindsey* implicitly relies is not wholly persuasive. As I now explain, it is not unreasonable to conclude that comity concerns suggest an interpretation of the statute providing for investigative expenses when the state fails to do so.

It seems likely that petitioners who have been denied both an opportunity to investigate and relief in state court will, when they return to federal court, contend that the state proceedings were not adequate and any factual findings made during the state court proceedings are not binding on the federal court, *see* 28 U.S.C. § 2254(d)(1)–(8), and/or, that the state's denial of funds results in the waiver of the exhaustion doctrine due to futility. *See* 28 U.S.C. § 2254(b) (application for writ of habeas shall not be granted unless state court remedies exhausted or "there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner"). *See also Gray v. Greer*, 707 F.2d 965, 968–69 (7th Cir.1983) (failure to exhaust excused where there is no meaningful state remedy); *Pickens v. Lockhart*, 714 F.2d 1455, 1464 n. 9 (8th Cir.1983) (exhaustion requirement excused where it would be futile). Provision of funds under the federal statute, however, precludes claims that a lack of funding rendered the state court procedures meaningless or futile. Thus, a reading of the federal statute to provide investigative funds when the state fails to do so reduces the potential for litigation concerning the fairness of the state proceedings, an issue far more abrasive in character then the provision of funds itself.

In sum, *Lindsey*'s concern for comity and its rationale for ignoring the statute's plain words seem misplaced. First, the "reasonably necessary" standard minimizes concerns about interfering with the state appointment process. Second, applying the statute as written minimizes the risk of review of issues potentially far more demeaning to the dignity of the state courts than the provision of funds. In any event, however, whether this court's observations concerning the appropriate resolution of comity concerns or *Lindsey* is more persuasive, the fact is that policy judgments cannot overcome the congressional determination at issue here.

For the above reasons, I conclude that the statute provides for funds for investigation of unexhausted state claims when such funds are reasonably necessary to pursuit of death penalty habeas relief. Accordingly, IT IS HEREBY ORDERED:

1. The order striking the respondent's appearance and brief is VACATED; and

2. The matter is again REMANDED to the magistrate judge for further proceedings in light of this opinion.

IT IS SO ORDERED.