Troy ASHMUS, Petitioner,

v.

**Arthur CALDERON, Warden of California State Prison at San Quentin, Respondent.**

**No. C 93–0594 TEH.**

United States District Court, N.D. California.

Aug. 25, 1997.

Michael Laurence, Jeanne Sternberg, Sternberg, Sowards & Laurence, San Francisco, CA, for Petitioner.

Morris Beatus, CA State Attorney General's Office, San Francisco, CA, for Respondent.

ORDER

THELTON E. HENDERSON, Chief Judge.

**INTRODUCTION**

Troy Ashmus was proceeding apace along the well-trod path from a state court conviction to federal habeas review when substantial changes in the law obscured the route and left its travelers in a realm of uncertainty. Unable to follow the customary course,

Ashmus and his fellow habeas petitioners have frequently had to turn to the Courts for guidance. Troy Ashmus' most recent request raises the question of the continuing propriety of holding a federal habeas petition in abeyance. Awaiting word from the Supreme Court and the Ninth Circuit, this Court originally deferred ruling on Ashmus' abeyance motion. However, the Supreme Court passed on its opportunity to provide direction,[1] and communication from the Ninth Circuit does not appear to be imminently forthcoming.[2] In an attempt to map the course Troy Ashmus must follow to ensure federal review of all of his claims the Court now considers his request to hold his recently filed federal petition, allegedly containing only "exhausted" claims, in abeyance pending state court exhaustion of his remaining claims.[3]

## DISCUSSION

Troy Ashmus currently has pending before the court a petition for habeas corpus containing twenty-four claims. Ashmus, however, does not want the Court to proceed with adjudication of that petition, but instead requests that the Court stay proceedings until thirteen newly discovered claims can be joined to the federal petition. Ashmus' request stems from the federal doctrine of exhaustion which prevents Ashmus from immediately presenting his thirteen new claims to the federal court.

1. On June 23, the Supreme Court summarily denied the petition for writ of mandate in *Calderon v. United States District Court (Beeler)*, 112 F.3d 386 (9th Cir.1997). *In re Calderon*, —— U.S. ——, 117 S.Ct. 2498, 138 L.Ed.2d 1004 (1997).

2. To date, the Ninth Circuit has not indicated whether it intends to consider the petition for writ of mandate in *Calderon v. United States District Court for the Northern District of California (Taylor)*. No. 97-70567 (9th Cir. filed May 15, 1997).

3. The complete procedural history of this case may be gleaned from the Court's orders of April 2 and April 24, 1997. Here, the Court merely lays out the significant and relevant events in this litigation: (1) April 2, 1997, the Court finds the Anti-terrorism and Effective Death Penalty Act ("AEDPA") inapplicable to Ashmus; (2) April 17,

In general, a federal court may not grant habeas relief until the prisoner requesting the relief has exhausted all available state remedies for each claim. 28 U.S.C. § 2254(b)(1);[4] *Gray v. Netherland*, —— U.S. ——, —— - ——, 116 S.Ct. 2074, 2081–82, 135 L.Ed.2d 457 (1996). Well over a hundred years have passed since the basic doctrine of exhaustion was introduced in habeas cases. *See, e.g., Ex Parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886) ("[It is a] duty of this court—and, we will add, of all other courts, national and state—to give preference to such principles and methods of procedure as shall seem to conciliate the distinct and independent tribunals of the states and of the Union, so that they may cooperate as harmonious members of a judicial system coextensive with the United States. . . ."). The modern formulation of the exhaustion doctrine had been clearly stated as early as 1944. *Ex parte Hawk*, 321 U.S. 114, 116–17, 64 S.Ct. 448, 450, 88 L.Ed. 572 (1944) ("Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted."); H.R.REP. No. 208, 80th Cong., 1st Sess. 180 (1947).

The Supreme Court recently clarified the effect of this long-standing doctrine of exhaustion in the habeas context when it explicitly held that *federal courts may not adjudi-*

1997, Ashmus files his federal petition; (3) April 17, 1997, the Ninth Circuit undermines the Court's April 2 order; (4) April 24, 1997, the Court finds 28 U.S.C. § 2244(d) applicable to Ashmus and tolls the statute of limitations on Ashmus' unexhausted claims; (5) June 2, 1997 the Court holds a hearing on Ashmus' motion to hold his federal petition in abeyance.

4. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254

cate a prisoner's claims that have not yet been presented to state court. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The Court, in *Rose,* further stated that federal courts may not address these "unexhausted claims" even where they are presented in a mixed petition, alongside "exhausted claims"—those claims already reviewed by the state courts. Consequently, a petitioner with unexhausted claims can either abandon those claims and have the federal court adjudicate the exhausted claims or postpone federal adjudication by returning to state court to exhaust available state remedies for unexhausted claims.

Following *Rose,* the Ninth Circuit's Death Penalty Task Force developed a model rule that attempted to create an orderly process for managing mixed petitions and guiding petitioners in capital habeas cases. The Ninth Circuit's model served as the basis for Local Rule 296–8(e) under which courts in this district examined newly filed petitions for unexhausted claims.[5] Fully exhausted petitions would be adjudicated, and mixed petitions would be held in abeyance while the petitioner presented the unexhausted claims to state court. This procedure, utilizing the Ninth Circuit's suggestion that abeyance may be an appropriate procedure for mixed habeas petitions, *see, e.g., Neuschafer v. Whitley,* 860 F.2d 1470, 1472 n. 1 (9th Cir. 1988), allowed petitioners' counsel to harmonize the confluence of pressures on them: (1) to conduct a reasonable and thorough investigation on behalf of their clients, *McFarland v. Scott,* 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994); (2) to include all discoverable claims in the first petition, *McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113

L.Ed.2d 517 (1991); and (3) to exhaust any new claims not previously presented to the state court. *Rose,* 455 U.S. at 509, 102 S.Ct. at 1199.

In general, litigation under Local Rule 296–8(e) followed an efficient and fair course. At the conclusion of state court appellate and/or collateral review, a death row prisoner would file a request for federal counsel and a stay of execution. *See* Local Rule 296–4. The appointed federal counsel would conduct an investigation designed to discover all possible claims and invariably would uncover a significant number of new claims that needed presentation to the state court. Petitioners would then file a petition containing all of their claims and the federal district court would identify the unexhausted claims, order petitioners to file state court exhaustion petitions, and hold the mixed petitions in abeyance pending exhaustion proceedings.[6]

This sequence of events became so common that some judges in the Northern District regularly issued scheduling orders that set deadlines for the completion of investigation, for the filing of the mixed petitions, and for the filing of the state court exhaustion petition. *See, e.g., Ashmus v. Calderon,* C 93–0594–TEH, Second Order Re: Scheduling and Discovery (N.D.Cal. Nov. 16, 1995); *Johnson v. Calderon,* C 95–0305–TEH (JSB), First Scheduling Order (N.D.Cal. Oct. 9, 1996).

Earlier this year, however, the Ninth Circuit suddenly halted this process for the presentation of federal habeas petitions to which the Courts, petitioners, and counsel had now become accustomed. *See Calderon v. United States District Court (Gordon)* 107 F.3d 756

---

**5.** Local Rule 296–8(e) states:

If the petition indicates that there are unexhausted claims for which a state court remedy is still available, petitioner will be granted a sixty (60) day stay of execution in which to seek a further stay from the state court in order to litigate the unexhausted claims in state court. During the proceedings in state court, the proceedings on the petition will be stayed. After state court proceedings have been completed, petitioner may amend the petition with respect to the newly exhausted claims.

**6.** This chronology of the typical habeas case was not unique to the Northern District, as all federal

district courts in California had a similar rule. *See Ninth Circuit Capital Case Management Plan, Appendix C* at 598, n. 36.; *Gordon v. Vasquez,* 859 F.Supp. 413, 416–8 (E.D.Cal.1994), *vacated by Calderon v. United States District Court (Gordon),* 107 F.3d 756 (9th Cir.1997). Courts in other circuits have permitted habeas cases to progress in a similar manner. *See, e.g., Christy v. Horn,* 115 F.3d 201 (3rd Cir.1997); *Burris v. Farley,* 51 F.3d 655, 658 (7th Cir.1995); *Lawson v. Dixon,* 3 F.3d 743, 748 (4th Cir.1993); *Andrews v. Deland,* 943 F.2d 1162, 1168, n. 3 (10th Cir.1991).

(9th Cir.1997); *Greenawalt v. Stewart,* 105 F.3d 1268 (9th Cir.1997). First, in *Greenawalt,* the court held that a district court did not abuse its discretion when it declined to hold a successive petition containing a single, unexhausted claim in abeyance and instead dismissed it. *Greenawalt,* 105 F.3d at 1275. The Ninth Circuit further suggested that "stay[ing] the petition instead of dismissing it, pursuant to ... *Neuschafer* ... would have violated *Rose.*" *Id.* at 1276. Then, in *Gordon,* the Ninth Circuit stated that a district court properly struck a mixed petition, noting that because the petition contained unexhausted claims, dismissal of the federal petition was required by *Rose. Gordon,* 107 F.3d at 760. The court also vacated that portion of the district court's opinion that had relied on an Eastern District Local Rule—identical to Northern District L.R. 296-8(e)—as authority for staying a mixed petition.

The two cases clearly demonstrate that District Courts in the Ninth Circuit may no longer hold a mixed petition in abeyance; however, their reliance on *Rose* in reaching that conclusion appears to be misplaced. The *Rose* holding is based on the doctrine of comity. While it is clear to this court how the principles of comity undergirding the exhaustion doctrine would be offended if a district court adjudicated a petition containing unexhausted claims, no such concerns are present where a court holds that same petition in abeyance. The doctrine of exhaustion serves two major principles of comity. First, the exhaustion requirement gives state courts a first opportunity to correct their own errors which helps minimize the friction between the state and federal systems by preventing federal disruption of state proceedings. *Rose,* 455 U.S. at 518, 102 S.Ct. at 1203 (A "rigorously enforced total exhaustion rule" will encourage state prisoners to seek full relief first from the state courts, thereby "giving those courts the first opportunity to review all claims of constitutional error."); *Duckworth v. Serrano,* 454 U.S. 1, 3, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981) (noting that the exhaustion requirement "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights"); *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *United States ex rel. Sostre v. Festa,* 513 F.2d 1313, 1319 (2d Cir.1975) (Feinberg J., concurring) (the exhaustion requirement "affords a state court system the chance to keep its own house in order before a federal court steps in to rule on a federal constitutional claim."). Second, the exhaustion doctrine helps preserve the role of state courts in the application of federal law. *Rose,* 455 U.S. at 518, 102 S.Ct. at 1203; *Batchelor v. Cupp,* 693 F.2d 859, 862-3 (9th Cir.1982). Similarly, delaying federal intervention permits state courts to become more familiar with, and hospitable to, federally protected interests. *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490, 93 S.Ct. 1123, 1127, 35 L.Ed.2d 443 (1973).

Courts have also noted numerous other benefits of exhaustion. The exhaustion requirement allows federal courts to avoid the potentially overwhelming burden of serving as the primary vindicators of federal constitutional rights in all state criminal prosecutions. *Wade v. Mayo,* 334 U.S. 672, 679-80, 68 S.Ct. 1270, 1274-75, 92 L.Ed. 1647 (1948) (noting that without the exhaustion rule, federal courts would face the impossible burden of having "to supervise the countless state criminal proceedings in which deprivations of federal constitutional rights are alleged."). District courts are also aided by exhaustion because federal claims fully exhausted in state courts will more often be accompanied by a complete factual record providing for a more focused and thorough review. *Rose,* 455 U.S. at 519-20, 102 S.Ct. at 1203-04. In addition, some courts recognize the possibility that state courts may "afford a more generous protection of the accused, and at the same time render unnecessary the decision of difficult issues of federal constitutional law." *Rose v. Dickson,* 327 F.2d 27, 29 (9th Cir.1964). Finally, the exhaustion requirement presents no undue prejudice to the petitioner. *Rose,* 455 U.S. at 522, 102 S.Ct. at 1205 ("a total exhaustion rule promotes comity and does not unreasonably impair the prisoner's right to relief....").

The Court neither questions the importance of any one of these goals nor disputes that exhaustion furthers all of these goals; however, neither the purposes of, nor the principles behind, exhaustion are undermined by the abeyance procedure recently forbidden by the Ninth Circuit. The interests of the state, the state courts, the federal courts, and petitioners that have been identified by *Rose* and other cases are served by preventing federal adjudication of claims upon which the state court has not had the opportunity to pass. Despite its statement that a district court must dismiss a mixed petition, the rationale of *Rose* only leads to the conclusion that a district court may not *adjudicate* a mixed petition.[7] *See Coleman v. Vasquez,* 771 F.Supp. 300, 303 (N.D.Cal.1991) (*Rose* merely prohibits adjudication of unexhausted claims). Premature adjudication bears no resemblance to abeyance.[8] Consequently a substantial analytical gap exists between the logic of *Rose* and the Ninth Circuit's finding in *Gordon* that a district court abuses its discretion by holding a mixed petition in abeyance during the pendency of state court exhaustion proceedings.

Nonetheless, this Court is bound by the *Gordon* decision and may not hold a mixed petition in abeyance. However, *Gordon* does not compel, or even suggest, that a Court must dismiss an exhausted petition. Quite the contrary, whatever coherence *Gordon* has in its application to mixed petitions is completely eliminated when applied to an exhausted petition. While *Gordon* was able to divine some offense to state court proceedings by holding unexhausted claims in abeyance, *no* argument can be made that holding exhausted claims in abeyance offends the principle of comity.

Furthermore, *Gordon* and *Greenawalt* recognize that a court may, in its discretion, hold a fully exhausted petition in abeyance. Citing *Fetterly v. Paskett,* 997 F.2d 1295 (9th Cir.1993),[9] the cases make it clear that a district court may hold a first habeas petition containing only *exhausted* claims in abeyance while the petitioner exhausts newly discovered, unexhausted claims in state court. *Gree-*

7. It could be argued that *Gordon* finds that the rationale of *Rose* can only be achieved by entirely precluding the possibility that a court would reach unexhausted claims. The Court notes that even if *Rose* and *Gordon* stand for such a proposition, the affirmative act of holding a claim in abeyance should sufficiently demonstrate a court's ability to withstand the temptation to adjudicate unexhausted claims.

8. Examining the procedures that have been adopted in the context of abstention is instructive for developing appropriate and efficient procedures when federal adjudication of a matter is delayed or precluded by the principles of comity and federalism. Abstention describes those circumstances where a district court declines to exercise, or postpones the exercise of, its jurisdiction in one of a small group of exceptions to the unflagging duty of a district court to adjudicate a controversy properly before it. *Colorado River Water Conservation Dist. v. U.S.,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976); *see, e.g., Thompson v. Wainwright,* 714 F.2d 1495, 1503 (11th Cir.1983) ("*Younger* abstention is, like § 2254 exhaustion, a comity-based doctrine that arguably spring from deference to state courts...."). In general, abstention is invoked either where state law is unclear and the federal court must permit the state court to clarify the law, or where the federal court must halt its proceedings to avoid interference with a state court proceeding. The procedures

followed by a court when abstaining from a case are largely based on one factor: whether the parties may return to federal court after the conclusion of the required state proceedings. Where abstention does not merely postpone federal review but precludes it, the federal court must dismiss the case. *See* CHERMINSKY, FEDERAL JURISDICTION at 707. On the other hand, where the parties may return to federal court after the state court litigation, the federal court merely stays its proceedings. *Id.* In the context of a habeas case, a petitioner may return to federal court after exhausting his/her state court remedies; consequently a procedure parallel to that employed in the abstention context would call for staying proceedings pending exhaustion. Furthermore, this abstention precedent demonstrates that the doctrine of comity is not necessarily offended by staying proceedings pending a comity-required state court proceeding.

9. In *Fetterly,* the counsel who had been appointed six months after the filing of a habeas petition discovered a new claim that had become cognizable in federal habeas six days before the federal petition was filed. Petitioner filed a state petition to exhaust the claim, and asked the district court to stay federal proceedings during the state court process. The district court declined, but the Ninth Circuit reversed, holding that the district court abused its discretion in refusing to stay proceedings while counsel exhausted the new claim.

*nawalt,* 105 F.3d at 1274 (noting that "a district court has discretion to stay a petition which it may validly consider on the merits," and that the equities favoring a stay are greater for first petitions); *Gordon,* 107 F.3d at 761, n. 10; *Greenawalt,* 105 F.3d at 1274 (citing *Lonchar v. Thomas,* 517 U.S. 314, ——, 116 S.Ct. 1293, 1299, 134 L.Ed.2d 440 (1996)),

■ The Court finds, therefore, that a district court may exercise its discretion to hold an exhausted petition in abeyance [10] and that neither the principles undergirding exhaustion nor *Gordon* and *Greenawalt* present any grounds weighing in favor of denying such abeyance requests. In this case, petitioner asks the Court to hold the exhausted petition [11] in abeyance and presents two basic reasons for the Court to approve this request: (1) the unknown effect of the newly enacted statute of limitations under the AEDPA, and (2) concerns of judicial efficiency and economy.

### A. Statute of Limitations

Petitioner first asserts that the potential effect of the newly enacted statute of limitations in the AEDPA should impel the Court to exercise its discretion in favor of holding his exhausted petition in abeyance. In its application to the typical case, the AEDPA's limitation period does not provide a compelling basis to hold an exhausted petition in abeyance. Because it appears that a petitioner can file his/her unexhausted claims in state court and have the statute of limitations tolled on all claims, the abeyance procedure is not necessary to protect the exhausted claims from the limitations period. 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for state-post conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period limitation under this subsection."); *Reyes v. Keane,* 90

F.3d 676, 678 (2nd Cir.1996) ("Time during which a properly filed state court application for collateral review is pending is excluded from the one-year period."); *Flowers v. Hanks,* 941 F.Supp. 765, 770, n. 4 (N.D.Ind. 1996) ("The AEDPA also added a provision which tolls the statute of limitations for the time period in which a petitioner seeks collateral review of his conviction is state courts."); *Valentine v. Senkowski,* 966 F.Supp. 239 (S.D.N.Y.1997) ("It is clear both from the plain meaning of the statute and the legislative history of the [AEDPA] that the 1–year period of limitations does not begin to run until after direct review has been completed and state post-conviction review has been exhausted.").

■ Furthermore, the Court notes that while no court has interpreted the precise operation of § 2244(d)(2) there is no indication that it is claim specific and operates only for those claims actually filed in state court. Instead, to achieve its goal of curbing "the lengthy delays in filing that now often occur in federal habeas corpus litigation, while preserving the availability of review when a prisoner diligently pursues state remedies and applies for federal habeas review in a timely manner," [12] § 2244(d)(2) must toll the limitations period on all exhausted claims and all unexhausted claims pending in state court. By filing the unexhausted claims in state court, a petitioner demonstrates that he/she is pursuing those claims diligently and petitioners in this position are essentially precluded from pursuing the exhausted claims. *See infra* footnote 18. No purpose, therefore, would be served by allowing the statute of limitations to run on a petitioner's exhausted claims while unexhausted claims were pending in state court. Consequently, the Court finds that a petitioner need not have all exhausted claims actually filed in

---

**10.** Other courts in this district have come to the same conclusion and have held exhausted petitions in abeyance. *See, e.g., Rodrigues v. Calderon,* C–96–1831 CW (N.D.Cal. August 4, 1997); *Clark v. Calderon,* C 94–2809 EFL (N.D.Cal. 1997); *Taylor v. Calderon,* C 92–1627 MHP (N.D. Cal. April 1, 1997); *Sully v. Calderon,* C 92–0829 CAL (N.D.Cal. March 27, 1997).

**11.** While petitioner has filed a petition that he believes contains only exhausted claims, before this Court can exercise its discretion to hold the petition in abeyance as an exhausted petition, the Court must examine it for unexhausted claims.

**12.** H.Rep. No. 104–23 at 29.

federal court in order to avoid the running of the statute of limitations on those claims.

In the usual case, therefore, a petitioner may leave his/her exhausted claims in limbo while pursuing his/her unexhausted claims in state court with no fear of losing the right to present those claims in federal court. The mere existence, therefore, of the newly enacted statute of limitations does not favor holding an exhausted petition in abeyance over dismissing it without prejudice.[13]

■ Notwithstanding how the statute of limitations will likely work in future cases, the uncertainty surrounding how the statute of limitations will operate in this case, may provide a basis for the court to hold Ashmus' exhausted petition in abeyance. First, Ashmus has not yet filed his unexhausted claims in state court; consequently, § 2244(d)(2) is not tolling the statute of limitations on any of his claims. Instead, to avoid the preclusive effect of the statute of limitations petitioner has been forced to rely on this Court's equitable tolling of the limitations period. Unfortunately, however, it is not absolutely certain that this Court has the authority to toll the statute of limitations. The Ninth Circuit stated in *Calderon v. United States District Court (Beeler)*, 112 F.3d 386 (9th Cir.1997) that 28 U.S.C. § 2244(d) is a statute of limitations subject to equitable tolling and the Supreme Court denied the petition for writ of mandate in *Beeler*. *In re Arthur Calderon, Warden*, —— U.S. ——, 117 S.Ct. 2498, 138 L.Ed.2d 1004 (1997). However, the potential remains that the Supreme Court will find that a district court may not equitably toll the AEDPA's statute of limitations. If the Supreme Court made such a finding and this Court had dismissed Ashmus' federal petition, all of Ashmus' claims—both exhausted and unexhausted—would be barred from federal court consideration. Consequently, Ashmus' options upon the threat of dismissal of his federal petition are equally unattractive. First Ashmus could request

the federal court to proceed on his exhausted claims petition and face the substantial likelihood that once his now-unexhausted claims are ripe for adjudication in federal court they would be dismissed as abusive of the writ. *See, e.g., McCleskey v. Zant*, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) ("Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex harass, or delay."); *Fetterly*, 997 F.2d at 1301 (recognizing the encumbrances that attach to subsequent petitions and noting the growing tendency of the Supreme Court to "shut the door" on second petitions); *Martinez–Villareal v. Stewart*, 118 F.3d 628 (9th Cir.1997) (noting that if a federal court proceeded on a petitioner's exhausted claims, "[t]he abuse of the writ doctrine probably would ... preclude federal review of the remaining claims once those claims had been exhausted in state court and raised in a second petition."). Or Ashmus could allow his federal petition to be dismissed and face the slight, yet very real, possibility that the Supreme Court will interpret § 2244(d) in such a way as to preclude the presentation of *all* of his claims.

On the other hand, if Ashmus' petition were not dismissed, a finding that § 2244(d) could not be tolled would not have as devastating of an effect. Ashmus' federal petition represents a secure anchor to federal court jurisdiction to which he could possibly relate back later-exhausted claims under Federal Rule of Civil Procedure 15(c). The abeyance procedure therefore charts a safe course for Ashmus as he attempts to pass between the Scylla and Charybdis of this litigation. Consequently, the uncertainty surrounding the application of the AEDPA's limitations period, weighs heavily in favor of the Court's

---

**13.** It is important to note that dismissing a petition without prejudice for failure to exhaust generally does not affect a petitioner's ability to return to federal court. *See In re Turner*, 101 F.3d 1323, 1323 (9th Cir.1996) ("[S]ection 2244 does not apply to second or subsequent habeas

petitions where the first petition was dismissed without prejudice for failure to exhaust state remedies."); *Camarano v. Irvin*, 98 F.3d 44 (2d Cir.1996) ("... a dismissal without prejudice can have no preclusive effect on subsequent petitions.").

exercising its discretion to hold the exhausted petition in abeyance.[14]

### B. Judicial Efficiency

Ashmus also argues that permitting petitioners to file exhausted petitions that will be held in abeyance pending state court review of unexhausted claims facilitates the discharge of the Court's obligations in this context. When presented with a convicted capital offender's claims for relief, the district court faces two essential duties. The Court must take all steps necessary to ensure prompt resolution of the matter and give full and fair consideration to all of the issues presented by the case. *In re Blodgett*, 502 U.S. 236, 239, 112 S.Ct. 674, 676, 116 L.Ed.2d 669 (1992). Achieving these two goals often requires conflicting acts and district courts are regularly forced to fashion creative solutions to either maximize promptness without reducing fairness or maximize fairness without reducing promptness. The abeyance procedure used by various courts throughout the country was one such solution.

By utilizing an up-front exhaustion analysis, the procedure previously employed by this Court ensured that all of the claims petitioner wished to have presented to federal court would be exhausted the first time the petitioner presented the petition for adjudication. On the other hand, without an antecedent federal exhaustion review, a petitioner must engage in the state exhaustion proceedings while facing the risk that a claim the petitioner thought was exhausted [15] would actually be found by the federal court to be unexhausted.[16] In such a circumstance, the federal court would have no efficient and fair course of action—it could delay proceedings for the purpose of exhausting the unexhausted claim [17] or it could proceed and likely preclude federal review of the unexhausted claim.[18]

---

**14.** The decision between staying proceedings and dismissing the action when a statute of limitations is in the picture was addressed by the Ninth Circuit. In *Young v. Kenny*, 907 F.2d 874 (9th Cir.1989). In *Young* the Ninth Circuit found that a prisoner's § 1983 claim challenging the application of good time credit to his sentence was premature as he had not pursued the claim through a writ of habeas corpus and the habeas route had a threshold exhaustion requirement. The Court held that because "it is not farfetched to contemplate that a prisoner may be unable to exhaust state remedies before the limitations period expires on his § 1983 claim" the district court should have stayed rather than dismissed the prisoner's complaint. *Id.*, at 878; *Mack v. Varelas*, 835 F.2d 995, 999 (2nd Cir.1987) (after finding that prisoner's § 1983 claim was premature, concluded "that the action should be stayed, rather than dismissed. . . .").

**15.** The previous procedure had the further advantage of permitting petitioners to avoid engaging in the guesswork of determining what claims the federal court would consider exhausted. With no guidance from federal court as to what claims are considered exhausted, petitioners would likely present more claims to state courts than necessary and state court dockets would needlessly expand. Facing the possibility of losing the right to any court review of some claims, petitioners will likely take the cautious route and present to state court all claims not unquestionably exhausted. An up-front exhaustion ruling, however, would guarantee that state courts would be presented only with those claims that had not yet been before the state courts and would help preclude duplicative litigation in state courts.

**16.** Such a mistake could be fatal to the claims mistakenly labeled. If a petitioner intentionally withholds a claim from the state habeas proceeding because he/she believed it was exhausted and the federal court finds it to be unexhausted, state court successive petition rules may preclude its presentation to state court or the federal court may exclude it from subsequent federal proceedings. *Farmer v. McDaniel* 98 F.3d 1548, 1560 (9th Cir.1996) ("We hold that a district court is not precluded as a matter of law from considering whether a petitioner has abused the writ by alleging in a subsequent federal habeas petition new and different grounds from those alleged in a prior federal habeas petition, whether or not that prior petition was determined on the merits.").

**17.** Of course, if the state were willing to waive the failure to exhaust defense, the Court could proceed on the unexhausted claim. *Brown v. Maass*, 11 F.3d 914, 914 (9th Cir.1993); *Thompson v. Wainwright*, 714 F.2d 1495, 1508 (11th Cir.1983) ("We hold that a district court in its discretion may accept the waiver of exhaustion in a habeas case as to any one or more issues or may reject it.").

**18.** A prisoner who decides to proceed only with his exhausted claims and deliberately sets aside his unexhausted claim risks dismissal of subsequent federal petitions. "[O]nce [a petitioner] obtained a hearing on the merits of any of his claims, he could no longer easily return to federal court on a new petition raising claims that were not exhausted when the earlier petition was filed." *Farmer v. McDaniel*, 98 F.3d 1548, 1561 (9th Cir.1996) (Schroeder, J., concurring). It

Permitting petitioners to present their claims to federal court in advance of total exhaustion also eliminates one method for petitioners to abuse the exhaustion rules in order to create unnecessary delay. Theoretically, a petitioner could intentionally fail to present certain claims to state court, claiming that he/she believed that they had already been exhausted. A district court would retain the discretion to dismiss such a claim if the record demonstrated that the petitioner was not acting in good faith or was deliberately seeking to present his claims in a piecemeal fashion, *Neuschafer v. Whitley,* 860 F.2d at 1480 (9th Cir.1988) (Alacorn, J. concurring); however, without such a record, the federal court would likely permit the petitioner to return to state court with the unexhausted claims and substantial delay would follow. *Farmer,* 98 F.3d at 1558. On the other hand, if the federal court informed petitioners which claims were exhausted before the state habeas proceedings began, petitioners could not then later claim that they believed that the claims were exhausted. As a result, federal courts would face fewer unexhausted claims and experience less delay.

■ The Court finds, therefore, that allowing petitioners to present their claims to federal court in advance of state habeas proceedings and holding the exhausted claims in abeyance [19] furthers the goal of judicial efficiency. *See, e.g., Arango v. Wainwright,* 716 F.2d 1353 (11th Cir.1983) (holding a federal habeas proceeding in abeyance to permit state court exhaustion "in the interests of judicial efficiency"). While courts in this Circuit may no longer be able to hold mixed petitions in abeyance, they can permit peti-tioners to present their claims to the Court before total exhaustion. This presentation would not be for the purpose of immediate adjudication of any claims, but simply to allow the federal court to rule on what claims have already been exhausted. The Court would then strike the unexhausted claims so they can be presented to state court and could allow the exhausted claims to lay dormant until *all* of petitioner's claims were ripe for federal court adjudication. Such a procedure would efficiently present all claims to state and federal courts without treading on comity concerns.

## CONCLUSION

The Court finds therefore that the uncertainty surrounding the newly enacted statute of limitations and the goal of judicial efficiency weigh heavily in favor of holding Ashmus' petition in abeyance. In addition, the Court finds that none of Ashmus' actions, to date, favor dismissal of his petition.[20] Accordingly, in a separate order, the Court will identify any unexhausted claims included in the currently filed petition. Those claims will be struck and petitioner will be instructed to file those claims, along with any other known unexhausted claims, in state court within thirty days of the filing of that order. The Court will then hold the remainder of petitioner's claims in abeyance pending exhaustion of the claims timely filed in state court.

**IT IS SO ORDERED.**

also should be noted that the Supreme Court has encouraged district courts to refrain from deciding petitions on their merits until all possible claims are before them. *Sanders v. United States,* 373 U.S. 1, 22–23, 83 S.Ct. 1068, 1080–81, 10 L.Ed.2d 148 (1963).

**19.** The Court recognizes that the primary benefit to judicial efficiency in this context is the upfront exhaustion analysis. The abeyance procedure itself also has advantages, including the easing of the administration of the Court's docket. In addition, without an abeyance procedure there may be no basis for the Court to conduct the substantially beneficial exhaustion examination.

**20.** Ashmus filed his federal petition at this court's order and to comply with the statute of limitations in the face of uncertain and rapidly mutating law. Ashmus previously represented that it would be impossible for him to file both a federal petition and a state petition. Ashmus behaved reasonably in choosing to file only the federal petition, and the court declines to see this as an attempt to circumvent the requirement that a petitioner exhaust all claims prior to seeking relief in federal court.